[960 NE2d 435, 936 NYS2d 666]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v CHRIS MCALPIN, Respondent.

Argued October 20, 2011; decided November 22, 2011

### APPEARANCES OF COUNSEL

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Grace Vee* and *David M. Cohn* of counsel), for appellant.

*Legal Aid Society, Criminal Appeals Bureau*, New York City (*Andrew C. Fine, Eve Kessler* and *Steven Banks* of counsel), for respondent.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be affirmed.

Defendant pleaded guilty to robbery in the second degree with the understanding that he would be adjudicated a youthful offender and receive a term of probation if he satisfied specified conditions. At the plea proceeding, Supreme Court further advised defendant that, if he violated the terms of the youthful offender agreement, the sentencing agreement would be vacated and the court could impose a prison sentence of at least $3^{1}/_{2}$ years, with a potential maximum sentence of 15 years. Defendant violated several terms of the youthful offender agreement and, at the subsequent sentencing proceeding, the court imposed a determinate prison sentence of $3^{1}/_{2}$ years plus five years of postrelease supervision.

On appeal, defendant contended that reversal was required under *People v Catu* (4 NY3d 242 [2005]) because, in describing the alternate sentence that defendant might receive if he violated the conditions imposed for obtaining youthful offender status, the court failed to reference the potential imposition of postrelease supervision. The Appellate Division reversed defendant's conviction and vacated his plea in a divided decision (68 AD3d 431 [2009]) and one of the dissenting Justices granted defendant leave to appeal to this Court.

Having elected to advise defendant of the consequences that might flow from the violation of the youthful offender agreement, the court referenced only a prison term, omitting any mention of the possibility of postrelease supervision, thereby giving defendant an inaccurate impression concerning the court's sentencing options. Accordingly, we conclude that reversal and vacatur of the plea was appropriate.

Although the dissent concludes in reliance on *People v Murray* (15 NY3d 725 [2010]) that defendant is foreclosed from obtaining relief because he failed to object at sentencing when the court first referenced postrelease supervision, we find this case to be distinguishable. In *Murray*, defendant had been told at the plea proceeding that two years of postrelease supervision would be imposed but was informed at the commencement of sentencing that the court would instead impose a sentence of three years. Because defendant had ample opportunity to object after the initial statement was made and before sentence was formally imposed, we concluded that his failure to preserve the issue in the sentencing court precluded our review. Here, in contrast, the court first mentioned postrelease supervision only moments before imposing the sentence.

We are also unconvinced that the court's brief remark at sentencing to the effect that it had previously advised defendant that he would receive a sentence of $3^{1}/_{2}$ years and five years' postrelease supervision if he violated the agreement, which defense counsel acknowledged, conclusively established that the court had advised defendant of the potential postrelease supervision sentence prior to accepting the plea. There is no indication in the record that the court or either counsel had reviewed the plea transcript or had focused specifically on whether, during the plea proceeding, the court had discussed the possibility of postrelease supervision—a potential sentence that was not part of the original agreement.

PIGOTT, J. (dissenting). The case before us raises two important issues, but the majority addresses neither. The first issue is whether a defendant may raise a challenge under *People v Catu* (4 NY3d 242 [2005]) on appeal when he made no objection to postrelease supervision (PRS) at sentencing, and his defense counsel agreed with the sentencing court's statement on the record that the defendant had been informed of postrelease supervision at the plea proceeding. The second issue is whether a sentencing court violates *Catu* when it imposes PRS, as part of an enhanced sentence following violation of a plea

agreement, if the defendant was not informed by the court at the plea proceeding that PRS would be part of his sentence should he violate the agreement. The majority seems to ignore the preservation issue, but then fails to answer the second question directly.

Defendant was arrested in possession of an electronic game console that had been forcibly taken from a subway passenger. He was charged by indictment with two counts of robbery in the second degree. He appeared with his attorney in Supreme Court, and pleaded guilty to one of the counts in full satisfaction of the indictment. The court placed him on interim probation for up to one year. As long as he reported regularly to a probation officer, successfully completed a youth program, and was not rearrested, he would receive youthful offender treatment, and a sentence of probation. If, on the other hand, he failed to fulfil these requirements, he would receive "state prison [time], minimum is three and a half years and the maximum fifteen years." No mention of PRS appears on the record.

Seven months later, defendant appeared before the same Justice. He had been arrested twice in the interim, and had failed to complete the youth program. The judge, referring to the plea proceeding, stated that she had told defendant that if he were not successful in abiding by the conditions of interim probation, he would "have to go to prison for 3-1/2 years and, of course, 5 years of Post-Release Supervision." Significantly, defendant's counsel added, "Yes; I remember that, Judge." No contradiction of that statement appears in the record.

The court imposed the minimum sentence of 3¹/₂ years' imprisonment, to be followed by five years' PRS. At no point during the sentencing did defendant object to the PRS or state any disagreement with his counsel's recollection that he had been informed at the plea proceeding of the potential for PRS.

However, on appeal, defendant, for the first time, argued that Supreme Court had failed to inform him at the plea proceeding of the PRS component of the potential enhanced sentence, thereby violating *Catu*. Defendant persuaded the Appellate Division, which reversed the judgment of conviction, vacated his plea, reinstated the indictment, and remanded the matter to Supreme Court for further proceedings thereunder (68 AD3d 431 [2009]). Two Justices forcefully dissented, and one granted the People leave to appeal to this Court.

In my view, under *People v Louree* (8 NY3d 541 [2007]) and *People v Murray* (15 NY3d 725 [2010]), defendant was required

to preserve his *Catu* challenge. *Louree* holds that preservation is normally not necessary in order for this Court to address "a nonconforming PRS sentence where the defendant has not been made aware of that part of the sentence before its imposition" (*Murray*, 15 NY3d at 726-727, citing *Louree*, 8 NY3d at 546). However, we added an important caveat to *Louree* in *Murray*. There, Supreme Court had informed defendant that he would probably be treated as a youthful offender if he met certain conditions. If he did not, the court stated that it would sentence him as an adult to two years' imprisonment and two years' PRS. After the defendant violated the plea deal, and was returned for sentencing as an adult, the court informed him, at the beginning of the proceeding, that it would impose three years of PRS, instead of two. We held that Murray *was* required to preserve his *Catu* challenge because he "was advised of what the sentence would be, including its PRS term, at the *outset* of the sentencing proceeding" and therefore "could have sought relief from the sentencing court in advance of the sentence's imposition" (*Murray*, 15 NY3d at 727 [emphasis added]).

In *Murray*, we carefully distinguished *Louree*. In the earlier case, defendant was not informed about the specific terms of PRS early enough to lodge an objection, because it was first mentioned when the sentence was actually imposed. Under those circumstances, it was impossible for the defendant to make a CPL 220.60 (3) motion to withdraw his plea, since such a motion must be filed "before the imposition of sentence" (CPL 220.60 [3]). In *Murray*, on the other hand, defendant had time in which to make a motion, but failed to do so. Here, as in *Murray*, defendant was made aware of the specific period of PRS early enough in the sentencing proceeding to allow him time to seek withdrawal of the plea under CPL 220.60 (3) or otherwise object to the imposition of PRS. If this was the first time he heard about PRS arising from these charges, defendant should not have sat in silence while his defense counsel conceded that he had been informed about PRS at the plea proceeding. Consequently, defendant was obliged to object before imposition of sentence, in order to preserve his *Catu* objection.

Given Supreme Court's recollection that it had told defendant that five years' PRS was part of the plea bargain, defense counsel's confirmation thereof, and the absence of a timely motion to withdraw the plea or any objection to PRS after defendant was given adequate notice of the term, I would decide this appeal on preservation grounds.

It follows then that because the Appellate Division's reversal depended on reaching an issue that is unpreserved, under our precedent, the reversal was not on the law (CPL 450.90 [2] [a]), and therefore the People's appeal should be dismissed.

Were I to set aside our holding in *Murray*, and assume that the PRS issues need not be preserved, I would reverse. The sentencing court stated on the record that it had advised defendant of the potential of PRS at the plea proceeding, and defense counsel agreed. If defendant wishes to dispute the accuracy of Supreme Court's recollection, his recourse is not a direct appeal. The record demonstrates that defendant was timely informed of PRS, and we are bound by that record.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur; Judge PIGOTT dissents in an opinion.

Order affirmed in a memorandum.